# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

In re ) Chapter 7 Proceedings
)
**JAMES AND KATHLEEN GILBRAITH,** ) Case No.: 2:13-bk-05013-DPC
)
) **ORDER OVERRULING BMO HARRIS BANK'S OBJECTION TO DEBTORS' EXEMPTION OF PROFIT SHARING PLAN**
Debtors. )
)
)

This matter came before the Court on BMO Harris Bank's Objection to James and Kathleen Gilbraith's claimed exemption of funds in a profit sharing plan. The Court considered the parties' pleadings, the experts' affidavits, the trial testimony of the parties' experts and admitted exhibits, the parties' closing arguments and briefs, and took the matter under advisement. The Court now overrules the Objection.[1]

## I. (A) Procedural Background

James and Kathleen Gilbraith (collectively "Debtors") filed their Chapter 7 bankruptcy petition on April 1, 2013 ("Petition Date") (DE 1).[2] In their schedules (DE 13), Debtors claimed certain assets as exempt, including $610,755.18 in the Gilbraith & Associates, LLC Profit Sharing Plan ("Plan"). The Plan was initially claimed exempt pursuant to A.R.S. §33-

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334(b). This Order constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014 (c).

[2] All docket entry numbers refer to the docket in the administrative case, case no. 2:13-bk-05013-DPC.

24  1126(B). On April 22, 2013, BMO Harris Bank ("Bank") filed an Objection to the Debtors'
25  claimed exemption of the Plan ("Objection") (DE 20). On the same date, Debtors filed an
26  Amended Schedule C (DE 22), changing their claimed exemption of the Plan from the
27  Arizona exemption available under A.R.S. § 33-1126(B), to the federal Bankruptcy Code
28  ("Code") exemption, 11 U.S.C. § 522(b)(3)(C).[3] Debtors filed their Response to the Bank's
29  Objection ("Response") on May 8 (DE 29), to which the Bank filed its Reply on May 10 (DE
30  30), along with a Rule 2004 Motion for Production of Documents ("2004 Motion") related
31  to the Plan (DE 31). Debtors produced the requested Plan documents.
32  On May 19, 2013, James Gilbraith ("Mr. Gilbraith") executed a new adoption agreement ("2013
33  Adoption Agreement") for the Plan. The Debtors then submitted to the Internal Revenue
34  Service ("IRS") the 2013 Adoption Agreement, Form 5500-EZ annual reports ("5500
35  Reports") for Plan tax years 2005-2012, an application to participate in the IRS's Voluntary
36  Correction Program ("VCP"), a Model VCP Compliance Statement, and a request for the IRS
37  to waive any penalties relating to the late submission of the 5500 Reports (collectively "VCP
38  File"). VCP is a program under the umbrella of the IRS's broader Employee Plans
39  Compliance and Resolution System ("EPCRS").
40  On August 9, 2013, the IRS sent to the Debtors a Compliance Statement and a letter relating to their
41  VCP File (collectively "Compliance Statement"). In the Compliance Statement, the IRS
42  approved the Plan's proposed corrective actions and stated that it would not disqualify the
43  Plan. On September 9, Debtors filed a Supplement to their Response ("First
44  Supplement") (DE 84). The Bank filed its Reply ("First Supplement Reply") on
45  November 15 (DE 103). On February 28, 2014, Debtors filed a Second Supplement to
46  their Response ("Second Supplement") (DE 115) and expert Michael Pietzsch's Affidavit
47  (DE 115, Ex. 1). In March, the Bank replied ("Second Supplement Reply") (DE 120),

---

[3] All references to the "Code" refer to Title 11 of the United States Code.

and in April, filed expert David Heap's Affidavit (DE 128). The case was subsequently reassigned to this Court for a trial set for September 2014. Both parties submitted amended expert affidavits ("Amended Pietzsch Affidavit" and "Amended Heap Affidavit") (DE 172 and 155, respectively), and this Court held a trial on the Objection on September 15 and 16, 2014. The parties filed closing briefs on October 16, 2014 (DE 190 and 191).

**I. (B) Factual Background**

Some law firms draft standardized prototype tax-exempt plans, for which the firm will seek a positive opinion letter from the IRS confirming that the prototype plan's form complies with the sections of the Internal Revenue Code of 1986 ("IRC")[4] exempting it from taxation. Such law firms then offer these prototype plans to their employer clients. These plans are attractive to employers because they can generally rely on the IRS opinion letter to the law firm confirming the prototype plan's tax-exempt qualification, provided the employer follows the terms of the prototype plan. Rev. Proc. 2005-16 § 19 (describing when an adopting employer can rely on a standardized master and prototype plan's opinion letter).[5]

Debtor James Gilbraith ("Mr. Gilbraith"), in his capacity as 100% owner and sole member of Gilbraith & Associates, LLP, created the Plan when he adopted Bryan Cave LLP's Prototype Defined Contribution Plan ("Prototype Plan")[6] on December 21, 2004 ("2004 Adoption"). Bryan Cave received IRS opinion letters approving the form of the Prototype Plan in 2002 and 2008 (collectively the "Opinion Letters").

---

[4] All IRC section references refer to Title 26 of the United States Code.
[5] In his Amended Affidavit, Pietzsch accurately observes that Rev. Proc. 2005-16 has been superseded by Rev. Proc. 2011-49, but that the relevant language survived verbatim. Amended Pietzsch Affidavit, ¶ 16, 6:20-22.
[6] The IRS refers to this class of plans as "standardized M&P plans," with "M&P" standing for "master and prototype."

Case 2:13-bk-05013-DPC   Doc 195   Filed 12/24/14   Entered 12/24/14 17:22:11   Desc
Main Document    Page 3 of 19

## II. Issues

This case concerns the Code's §522(b)(3)(C) exemption for certain tax-exempt retirement funds and other accounts. The primary issue is whether the Plan was "qualified" under IRC §401(a) as of the Petition Date. To be qualified, the Plan had to have received a "favorable determination" under IRC §7805 that was effective on the Petition Date. If the Plan had received such a determination, the Bank must rebut the Code's presumption that the Plan was exempt. If the Plan had not received a favorable determination under IRC §7805, Debtors must show there was no previous adverse ruling from a court or the IRS regarding the Plan's qualification, and that the Plan was in "substantial compliance" with the IRC on the Petition Date. If there was neither a favorable determination nor an adverse prior ruling, and the Plan was not in substantial compliance, Debtors must prove they were not materially responsible for the Plan's failure to comply with the IRC.

## III. Summary of the Parties' Arguments

**(a) Bank's Arguments**

The Bank argues the Plan was not qualified on the Petition Date because of the (1) failure to timely execute an agreement adopting Plan amendments required by IRS Cumulative List 2004-84 and Notice 2005-95 (collectively "Required Amendments")[7]; and (2) failure to timely file the Plan's required annual 5500 Reports for the years 2005 through 2012. The Bank contends these failures cost the Plan its tax-exempt status under IRC section 401(a) and disqualified it as of the Petition Date.

The Bank also argues that the Plan is not presumed to be exempt because neither of the Opinion Letters is a favorable determination from the IRS for the Plan. Even if the

---

[7] The deadline for timely adoption of the Required Amendments was April 30, 2010. Amended Heap Affidavit, ¶ 26, 8:7-8.

Opinion Letters were favorable determinations, the Bank contends that neither was effective as to the Plan on the Petition Date because the Required Amendments had not been adopted as of the Petition Date. The Bank also urges that the failures to timely file the Plan's 5500 Reports, adopt the Required Amendments, or to have any practices or procedures in place to prevent such failures, were evidence that the Plan was not in substantial compliance with the IRC as of the Petition Date. Lastly, the Bank argues that Kathleen Gilbraith's ("Ms. Gilbraith") lack of culpability is irrelevant and that Mr. Gilbraith's negligence in managing the Plan on behalf of the marital community bars a finding in favor of Ms. Gilbraith or the marital community under §522(b)(4)(B)(ii)(II).

**(b) Debtors' Arguments**

Debtors contend that, at no time relevant to this matter, was the Plan ever disqualified, that any noncompliance on the Petition Date did not disqualify the Plan, and that the post-petition correction of any noncompliance was retroactive back to a time period prior to the Petition Date. Debtors argue that the Opinion Letters are favorable determinations of the Plan qualifying it as of the Petition Date and that the Bank failed to rebut the presumption that the Plan was exempt on the Petition Date.

Alternatively, Debtors urge that if the Plan had not received a favorable determination effective on the Petition Date via the Opinion Letters, neither a court nor the IRS had previously issued an adverse determination and the Plan was in substantial compliance with the IRC. Debtors support their position by noting that the IRS did not penalize the Plan for untimely filing the 5500 Reports and the IRS accepted the submitted 2013 Adoption Agreement in correction of the earlier failure to timely adopt the Required Amendments.

Finally, the Debtors argue that, if the Plan did not have an effective favorable determination on the Petition Date and if the Plan was not in substantial compliance with the IRC, that Ms. Gilbraith's exemption saves the Plan. According to this theory, because the

Plan was for the benefit of the marital community, Ms. Gilbraith's complete lack of involvement with the Plan's management causes her to be "not materially responsible" for the Plan's non-compliance and that she can claim a valid §522(b)(3)(C) exemption on behalf of her marital community.

**IV. Relevant Law and Revenue Procedures**

Because this case involves the intersection of bankruptcy law, tax law, and a number of IRS Revenue Procedures, the Court provides the following brief overview of the legal and regulatory sources of authority at play in this matter.

**(a) Bankruptcy Law**

The Code, bankruptcy case law, and the Federal Rules of Bankruptcy Procedure provide as follows.

*1. The Code Exempts Tax-Exempt Funds and Accounts*

Section 522(b)(3)(C) of the Code exempts from the property of the estate "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401 . . . of the Internal Revenue Code of 1986." IRC section 401(a) sets forth the qualification requirements which pension, profit-sharing, and stock bonus plans must meet in order to be tax-exempt.

*2. Certain Funds Are Presumed Exempt*

Money in a fund or account claimed as exempt under section 522(b)(3)(C) is presumed to be exempt if the fund "has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 522(b)(4)(A). This Code provision parallels the Ninth Circuit's broader case law on the point, which is that a claimed exemption is "presumptively valid." *In re Nicholson*, 435 B.R. 622, 630 (9th Cir. BAP 2010) (quoting

*In re Carter*, 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999)). IRC §7805 provides the foundation for the rules and regulations used to enforce the IRC as it pertains to retirement plans.

### 3. *Debtors' Burden When Seeking to Exempt a Plan Which is Not Presumed Exempt*

Debtors may exempt money in a fund or plan that has not received a favorable determination under IRC §7805 if: (1) neither a court nor the IRS has made an adverse determination as to the fund, and either (2) the fund "is in substantial compliance with the applicable requirements" of the IRC, or (3) the fund is <u>not</u> in substantial compliance with the IRC, but "the debtor is not materially responsible for that failure." 11 U.S.C. § 522(b)(4)(B).

### 4. *Debtors' Right to Participate in VCP on the Petition Date*

Filing of a bankruptcy petition is the point in time at "which the status and rights of the bankrupt, the creditors, and the trustee in other particulars are fixed." *Myers v. Matley*, 318 U.S. 622, 626, 63 S. Ct. 780, 783 (1943). Debtors' exemption rights are fixed upon their filing a bankruptcy petition. This is "the so-called 'snapshot' rule…" discussed by the Ninth Circuit in the case of *In Re Jacobson*, 676 F. 3d 1193, 1199 (9th Cir. 2012).

### 5. *Debtors Had the Right to Correct Plan Failures with Retroactive Effect*

Mr. Gilbraith, as sole member and owner of the Plan's sponsor, Gilbraith & Associates, LLC, had the right to participate in VCP on and after the Petition Date. An unpublished Ninth Circuit BAP opinion addressed the meaning and effect of IRS compliance statements which declined to seek disqualification of two plans after the debtor, post-petition, corrected the pre-petition plan failures via VCP. In *In re Richey*, the BAP found the debtors "possessed a right under federal tax law to participate in the VCP . . . and to cure any defects

potentially disqualifying the Plans to bring them back into compliance with a retroactive effect." *In re Richey*, 2011 WL 4485900, at *11 (9th Cir. BAP 2011).

### 6. Objecting Party's Burden of Persuasion

Federal Rule of Bankruptcy Procedure 4003(c) states: "the objecting party has the burden of proving that the exemptions are not properly claimed."

### 7. Exemption Statutes are Liberally Construed in Favor of the Debtor

Exemption statutes are to be liberally construed in favor of a debtor because doing so advances the purpose of such exemptions as well as the fresh start a discharge is intended to grant to an honest debtor. *See In re Glimcher*, 458 B.R. 549, 550 (Bankr. D. Ariz. 2011); *In re Rolland*, 317 B.R. 402, 412-3 (Bankr. C.D. Cal. 2004).

**(b) Revenue Procedures**

Applicable IRS Revenue Procedures provide as follows.

### 1. An Adopting Employer Can Rely on a Prototype Plan's Opinion Letter

"An employer adopting a standardized M&P plan may rely on that plan's opinion letter except as provided in (1) through (3)[8] and section 19.03 below, if the sponsor[9] of such plan has a currently valid favorable opinion letter, [and] the employer has followed the terms of the plan . . . ." Rev. Proc. 2005-16 § 19.01.

### 2. An Opinion Letter Can Qualify as a Favorable Determination

"If an employer can rely on a favorable opinion or advisory letter pursuant to this section, the opinion or advisory letter shall be equivalent to a favorable determination letter." Rev. Proc. 2005-16 § 19.04.

---

[8] The circumstances described in these subsections do not apply to the facts of this case.
[9] The IRS refers to an employer, such as Gilbraith & Associates, which adopts a standardized M&P plan as "sponsor" or "plan sponsor." Gilbraith & Associates "ha[d] a currently valid favorable opinion letter" to the extent that it could rely on the Opinion Letters for the Plan. *See infra* Part V.(b).

### 3. Types of Qualification Failures

Rev. Proc. 2003-44 defines a number of terms important to the Court's analysis. "Qualification Failure means any failure that adversely affects the qualification of a plan." Rev. Proc. 2003-44 § 5.01(2) (quotation marks omitted). There are four such types of failures. *Id.*

Of the four types of "Qualification Failures," two are relevant to this case. A "Plan Document Failure" is "a plan provision (or the absence of a plan provision) that, on its face, violates the requirements of § 401(a) . . . ." *Id.* at § 5.01(2)(a). An "Operational Failure" is "a Qualification Failure . . . that arises solely from the failure to follow plan provisions." *Id.* at § 5.01(2)(b). Debtors concede the failure to timely adopt the Required Amendments was a Plan Document Failure, but deny that there were any Operational Failures. The Bank concedes that there were no Operational Failures pertinent to the Plan in question.

### 4. Plan Sponsors Can Correct Plan Document Failures via VCP

"A Plan Sponsor may use VCP . . . for a Qualified Plan . . . to correct Plan Document, Demographic, and Operational Failures by a plan amendment, . . . provided that the amendment complies with the applicable Code requirements, including, for a Qualified Plan, § 401(a)." Rev Proc. 2013-12 § 4.05(1).

### 5. Corrections Made via VCP Have Retroactive Effect to Date of Failure

Rev. Proc. 2013-12 § 6.02(1), titled "Restoration of benefits," states: "The correction method should restore the plan to the position it would have been in had the failure not occurred, including restoration of current and former participants and beneficiaries to the benefits and rights they would have had if the failure had not occurred." The retroactive effect of VCP corrections is further supported by the IRS's own Model VCP Submission Compliance Statement, Appendix C Part II, Schedule 2, Section II ("Section II"). Section

II is titled "Description of Proposed Method of Correction," and includes a check box next to the following description:

> "A. Qualified Plan. The Plan Sponsor has adopted (or will adopt) amendments that satisfy the requirements of all of the items checked in Section IA of this Appendix C Part II, Schedule 2, <u>retroactively to the effective dates of the specific provisions contained in the amendments.</u> The amendments and restated plan documents (where applicable) are enclosed with this submission."

Rev. Proc. 2013-12, (emphasis added) *available at* http://www.irs.gov/irb/2013-04_IRB/ar06.html#d0e5276. This box is checked in the Debtors' IRS-signed Compliance Statement.

### 6. *Failing to File the 5500 Reports Was Not a Qualification Failure*

"[T]he correction programs are not available for events for which the [IRC] provides tax consequences other than plan disqualification . . . For example, failures to file the Form 5500 series cannot be corrected under this revenue procedure." Rev. Proc. 2013-12 § 6.09(1).

### 7. *Relief from Civil Penalties for Failing to Timely File 5500 Reports*

Rev. Proc. 2014-32 established the Pilot Penalty Relief Program - Late Annual Reporting for Non-Title I Retirement Plans ("One-Participant Plans" and Certain Foreign Plans) ("Pilot Program"). Although Rev. Proc. 2014-32 did not take effect until June 2, 2014 (a year after Gilbraith had submitted the VCP File), it seemingly would have applied to this situation. The Pilot Program "provid[es] administrative relief to plan administrators and plan sponsors of certain retirement plans from the penalties otherwise applicable . . . for a failure to timely comply with the annual reporting requirements imposed under . . . the [IRC]."[10] Rev. Proc. 2014-32 § 1.

---

[10] The omissions indicated by the ellipses are, respectively: "under §§ 6652(e) and 6692 of the [IRC]," and "§§ 6047(e), 6058, and 6059 of."

Absent the Pilot Program, "[p]lan sponsors and plan administrators who fail to file timely Form 5500 series annual returns/reports for their retirement plans may be subject to civil penalties under the Code." *Id.* at § 2. The Plan would have been eligible for relief under the Pilot Program, and the IRS would have waived any penalties. *Id.* at §§ 4.02, 4.05, and 5.01. This conclusion is supported by the fact that the IRS did not penalize the Plan for the untimely 5500 Reports. In any event, failure to timely file 5500 Reports appears to, at most, be a matter of assessing civil penalties not the outright disqualification of an offending plan.

**V. Analysis**

    **(a) The Plan Was Qualified on the Petition Date**

Debtors' bankruptcy filing neither restricted nor expanded the Debtors' right to participate in VCP. *Myers v. Matley*, 318 U.S. 622, 626, 63 S. Ct. 780, 783 (1943). The right to participate in VCP included the benefit of the retroactive effect of the IRS-approved corrective measures. Rev. Proc. 2013-12 § 6.02(1); *In re Richey*, 2011 WL 4485900, at *11 (9th Cir. BAP 2011); IRS Compliance Statement § VII (DE 84, Ex. 1). Debtors learned of the Plan's defects post-petition and promptly submitted the VCP File to the IRS.

    *1. Interpreting the Compliance Statement*

The IRS responded to the VCP File by stating that "[t]he Service will not pursue the sanction of revoking the tax-favored status of the plan under § 401(a), 403(b), 408(k), or 408(p) of the [IRC] on account of the failure(s) described in this submission." IRS Compliance Statement § VII (DE 84, Ex. 1). This statement identifies some important assumptions. First and most obviously, the IRS has the authority to revoke a plan's tax-favored status as a sanction for plan failures reported via VCP. Second, the IRS has the discretion to decline to sanction plan sponsors who report plan deficiencies via VCP. Third,

263   at least some reported deficiencies do not, in the IRS's view, merit revocation of qualification
264   under IRC section 401(a). Fourth, the IRS's use of the word "revoking" assumes and implies
265   the Plan was qualified at the time of the Compliance Statement.

266   In the Compliance Statement, the IRS limited the scope of its decision: "[t]his
267   compliance statement considers only the acceptability of the correction method(s) and the
268   revision(s) of administrative procedures described in the submission"; and "[t]he reliance
269   provided by this compliance statement is limited to the specific failures and years specified
270   . . . ." *Id.* The IRS also expressly conditioned its Compliance Statement on: "(1) there being
271   no misstatement or omission of material facts in connection with the submission and (2) the
272   completion of all corrections described in this compliance statement within one hundred fifty
273   (150) days of the date of the compliance statement." *Id.* Nothing in the record suggests there
274   were any misstatements in the VCF File or that necessary Plan corrections were not fully and
275   timely made.

276   The Compliance Statement does not indicate any sanction on account of the
277   deficiencies in the VCP File. This omission, when read with the other assumptions and
278   conditions of the Compliance Statement, identifies a fifth assumption: in the IRS's view, if
279   a VCP participant honestly and accurately describes its plan deficiencies in a VCP
280   submission, and completes the IRS-approved corrections within a certain time, sometimes
281   no sanction is warranted.

282   *2. Applying the Facts to the Law*

283   The failure to timely execute the Required Amendments was a Plan Document
284   Failure, as that term is defined in Rev. Proc. 2003-44 § 5.01(2)(a). Plan Document Failures
285   are a subset of Qualification Failures, which, by definition, "adversely affect[] the
286   qualification of a plan." Rev. Proc. 2003-44 § 5.01(2). The Plan Document Failure was
287   corrected by adopting the Required Amendments in the 2013 Adoption Agreement. Rev

Proc. 2013-12 § 4.05(1); IRS Compliance Statement § VII (DE 84, Ex. 1). The correction was retroactive "to the effective dates of the specified provisions contained in the amendments." IRS Compliance Statement § VII (DE 84, Ex. 1). The relevant effective date is April 30, 2010, which was the deadline for plan sponsors to adopt the Required Amendments. Accordingly, the correction of the Plan Document Failure was retroactive to April 30, 2010, well before the Petition Date. Rev. Proc. 2013-12 § 6.02(1); IRS Compliance Statement § VII (DE 84, Ex. 1).

The failure to timely file the 5500 Reports was not a Qualification Failure. *See* Rev. Proc. 2013-12 § 6.09(1). This means the Compliance Statement would not and does not speak to the delinquent 5500 Reports because VCP is only available to correct Qualification Failures. Rev. Proc. 2003-44 § 4.01(2). Because the definition of Qualification Failure encompasses "any failure that adversely affects the qualification of a plan," it follows that the failure to timely file 5500 Reports had no adverse effect on the Plan's qualification. Rev. Proc. 2003-44 § 5.01(2)(a). The IRS's decision not to impose any penalties relating to the delinquent 5500 Reports and the lack of any mention of the 5500 Reports in the Compliance Statement support this conclusion.

This Court also finds persuasive the *Richey* court's interpretation of the nearly-identical language from the compliance statements in that case as it relates to the status of the Plan's qualification. In *Richey*, the BAP held "[b]ecause the compliance statements express that the IRS will not seek the sanction of disqualification of the Plans, the Plans were and are, for all intents and purposes, qualified." *In re Richey*, 2011 WL 4485900, at *11 (9th Cir. BAP 2011). The *Richey* court found meaning in the IRS's compliance statements in that case as it related to the defects' effects on the plans' qualification: "[a]ccording to the compliance statements, <u>as far as the IRS was concerned the Plans were now in compliance</u>

<u>with the IRC and, actually, were never considered "disqualified" at any point in time."</u> *Id.* (emphasis added).

In the case at bar, the IRS's Compliance Statement did not indicate the Plan would have been disqualified absent the VCP File. The IRS saw no need to disqualify the Plan or to even assess a penalty for the apparently minor Plan Document Failure. Significantly, the Plan was never disqualified which means that it was, at all relevant times, qualified. Since the Plan was a qualified plan, the Plan Document Failure could be corrected by submitting the 2013 Adoption Agreement via VCP. Rev. Proc. 2013-12 § 4.05(1).

In *Jacobson,* the Ninth Circuit notes a court must review a debtor's claimed exemption in the context of the entire law applicable to the claimed exemption on the date the bankruptcy was filed in order to determine whether the exemption applies. *Jacobson* at 1199. In that case, the court found that, while the homestead exemption claimed by the debtors was valid at the date of their bankruptcy petition, the applicable state homestead exemption statute required timely reinvestment of proceeds realized from sale of the homestead. Where the debtors failed to timely reinvest sale proceeds following their post-petition sale of their homesteaded property, the proceeds lost their exempt status. *Jacobson* supports the proposition that the Debtors' exemption "snapshot" taken at the Petition Date must be viewed in the larger context of the rights and duties supplied by the applicable exemption statutes. Here, applicable federal retirement plan exemption laws afford the Debtors an opportunity to cure Petition Date defects in the Plan by participation in VCP. The Plan's Petition Date Document Failures were corrected post-petition and such corrections were applied retroactive to April 30, 2010.

The Debtors argue the Bryan Cave law firm and the Plan's CPA's are to blame for failing to inform them of the need to amend the Plan by April 30, 2010 and for failing to prepare and timely file the Plan's 5500 Reports. The Court received no admissible evidence

Case 2:13-bk-05013-DPC    Doc 195    Filed 12/24/14    Entered 12/24/14 17:22:11    Desc
Main Document    Page 14 of 19

as to either point. Nevertheless, the Court finds that it need not find who is to blame for these failures in order to resolve the issues presented to the Court.

The Debtors' Petition Date right to participate in VCP and to benefit from VCP's retroactive correction of Qualification Failures defeat the Bank's contention that the Plan was not qualified on the Petition Date. For this Court to rule otherwise would be to deprive Debtors of lawful rights which they possessed on the Petition Date.

**(b) The Plan Had Received a Favorable Determination on the Petition Date**

The Bank argues that because Debtors had not amended the Plan to adopt the Required Amendments on the Petition Date, the Opinion Letters do not apply to the Plan and Debtors cannot rely on them as supplying a favorable determination.

The post-petition Compliance Statement's retroactive application defeats the Bank's argument. When the IRS issued the Compliance Statement, the proposed corrective actions, including executing and submitting the 2013 Adoption Agreement, brought the Plan into compliance with the IRC, effective as of April 30, 2010. Rev Proc. 2013-12 § 4.05(1); IRS Compliance Statement § VII (DE 84, Ex. 1). Accordingly, Debtors could retroactively rely on the Prototype Plan's 2002 and 2008 Opinion Letters as favorable determinations for the Plan as of April 30, 2010, up to and through the Petition Date. Rev. Proc. 2005-16 §§ 19.01, 19.04. Because the Plan was qualified (and was never disqualified) and had received a favorable determination effective on the Petition Date, the Code presumes that the Plan is exempt from the property of the estate. 11 U.S.C. § 522(b)(4)(A).

**(c) The Bank Failed to Rebut the Presumption**

In light of the Compliance Statement's retroactive application, the Plan was qualified on the Petition Date. The Bank had the burden of rebutting the §522(b)(4)(A) presumption. The Bank failed to carry its burden.

In addition to the law and facts already discussed, the Court heard convincing evidence arguing against disqualification even if the Plan had neither been qualified nor received a favorable determination on Petition Date. For example, both parties' experts, Michael Pietzsch and David Heap, testified that the IRS generally disfavors plan disqualification as a sanction. Debtors argue, and the Bank concedes, that the Plan had no Operational Failures. In cases where the IRS disqualified a plan, it has usually been where a plan's Operational Failures rose to the level of egregious bad acts and flouting the intent of the IRC. For example, in the *Bauman* case the court points to many egregious acts by the debtor, including illegally funding $1.2 million in plan contributions from sources other than the plan sponsor, most of which came directly from the debtor himself. *In re Bauman*, 2014 Bankr. LEXIS 742 (Bankr. N.D. Ill. 2014). The Bank concedes that there were no loans, improper investments, or any such bad acts regarding operational aspects pertaining to the Plan.

Debtors argue there is no precedent for plan disqualification solely on the basis of a Plan Document Failure. The Bank does not provide, and acknowledges that it did not find, any such precedent. Debtors also argue there is no precedent for plan disqualification on the sole basis of failing to timely file 5500 Reports, or on the combined bases of a Plan Document Failure and delinquent 5500 Reports. Again, the Bank does not provide, and acknowledges that it did not find, any such cases.

Contrary to the Bank's arguments, the weight of the evidence supports Debtors' contention that the IRS's attitude toward plan defects, especially the specific defects at issue in this case, is fairly forgiving. This is evident by the variety of programs available to cure defects under EPCRS, including VCP, for a reduced sanction or for no sanction whatsoever. The IRS's stated principles of EPCRS include language implying a degree of leniency when plan sponsors act in good faith and make voluntary corrections. *See* Rev. Proc. 2003-44 §

1.02. The foregoing attitude is also evidenced by the creation of the Pilot Program, and the fact that the IRS essentially granted the Plan relief under the Pilot Program even before it existed.

Even if the Plan had not received a favorable determination, Debtors would have been entitled to the §522(b)(3)(C) exemption. The Plan had not received a prior adverse determination from a court or the IRS. Further, the Court finds the Plan was in substantial compliance with the IRC. This finding is supported by (1) the IRS's decision not to penalize the Plan for either the Plan Document Failure or the delinquent 5500 Reports, (2) the lack of any precedent for plan disqualification solely on account of a Plan Document Failure or a Plan Document Failure coupled with delinquent 5500 Reports, (3) the absence of any Operational Failures or other bad acts relating to the Plan's administration, and (4) the creation of the Pilot Program to address the issue of employers not timely filing 5500 Reports. As to this final point, it is worth noting that Debtors' expert testified to confusion even among CPAs and professional plan administrators regarding the necessity and/or timing of filing 5500 Reports for single-participant plans. *See* Amended Pietzsch Affidavit, ¶ 26, 22:9-13.

Finally, this Court asked the parties to brief the question of whether Ms. Gilbraith, on behalf of her marital community, could declare the Plan's assets exempt where she was not materially responsible for any non-compliance by the Plan. This Court received no evidence to the effect that Ms. Gilbraith was at all responsible for any Plan non-compliance issues. Rather, she had no connection with the Plan whatsoever, except that the Plan's assets were and are part of the marital community that exists between the Debtors. While this Court's findings above render this issue moot, the Court nevertheless finds that, if the Plan was not in substantial compliance at times relevant to the question, Ms. Gilbraith's right to declare as exempt her marital community's interests in the Plan could not be defeated

by any culpability Mr. Gilbraith may have had in such non-compliance. To hold otherwise would run contrary to the principle that exemption declarations must be construed liberally in favor of a debtor.

**VI. Conclusion**

The post-petition VCP correction of the Plan Document Failure was retroactive to April 30, 2010. Since there was no other Qualification Failure, the Plan was qualified on the Petition Date under IRC §401(a). The Plan had received a favorable determination that was effective on the Petition Date because Bryan Cave had received 2002 and 2008 Opinion Letters for the Prototype Plan on which the Debtors could rely. The Plan is presumed exempt under §522(b)(4)(A). The Bank failed to rebut the presumption. Even if it could be said there was no favorable determination under IRC §7805, this Court finds the Plan was in substantial compliance with the IRC. Finally, if the Plan was not in substantial compliance within the meaning of §522(b)(4)(B)(ii)(I), Ms. Gilbraith was not materially responsible for such non-compliance so she successfully declared her marital community's exemption in the Plan's assets.

Accordingly, **IT IS ORDERED** overruling the Bank's Objection to Debtors' Asserted Exemption of the Plan assets.

**So ordered.**

Dated: December 24, 2014

438
439
440
441     COPY of the foregoing mailed by the BNC and/or
442     sent by auto-generated mail to:
443
444     All interested parties
445
446
447
448
449